**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ELIZABETH CARR** *individually and on behalf of all other persons similarly situated*,

                                      **Plaintiff,**

   vs.
                                                5:20-CV-01597
                                                (MAD/TWD)

**FREEDOM CARE LLC,**

                                      **Defendant.**

---

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| **GATTUSO & CIOTOLI, PLLC**<br>The White House<br>7030 East Genesee Street<br>Fayetteville, New York 13066<br>Attorneys for Plaintiff | **FRANK S. GATTUSO, ESQ.** |
| **VIRGINIA & AMBINDER, LLP**<br>40 Broad Street, 7th Floor<br>New York, New York 10004<br>Attorneys for Plaintiff | **JAMES E. MURPHY, ESQ.**<br>**LADONNA LUSHER, ESQ.**<br>**ALANNA ROSE SAKOVITS, ESQ.** |
| **JACKSON LEWIS P.C.**<br>58 South Service Road, Suite 250<br>Melville, New York 11747 | **NOEL P. TRIPP, ESQ.** |
| **JACKSON LEWIS P.C.**<br>677 Broadway, 4th Floor<br>Albany, New York 12207 | **CHRISTOPHER J. STEVENS, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 22, 2020, Plaintiff, Elizabeth Carr, brought this action on behalf of herself and a putative class of individuals, asserting claims against Defendant Freedom Care, LLC for unpaid minimum wage, overtime, delayed payments, and failure to pay wages pursuant to the Fair Labor Standards Act (hereinafter "FLSA") and New York Labor Law (hereinafter "NYLL"), as well as breach of contract and wage statement violation pursuant to Section 195(3) of the NYLL. Dkt. No. 1.  Plaintiff alleges that Defendant engaged in a policy and practice of failing to pay Plaintiff and the putative class all of their earned wages (including all hours worked, minimum wages, and overtime compensation), failed to preserve the records required to properly calculate wages, and failed to pay wages on the regularly scheduled pay day.  *Id.* at ¶¶ 3-4.  Defendant has moved to compel Plaintiff to arbitrate her claims pursuant to the Personal Assistant Agreement she entered into with Defendant.  Dkt. No. 19.

### II. BACKGROUND

Plaintiff claims that she was employed by Defendant as a home health care attendant providing in-home, personal and health care assistance to Defendant's clients from April 2019 to September 2019.  Dkt. No. 1 at ¶¶ 27-28.  During such time, Plaintiff provided a variety of services to her elderly clients, including personal services such as assistance with dressing, bathing and personal grooming, cooking and feeding, changing diapers, heavy cleaning, and making appointments.  *Id*. at ¶ 29.  Plaintiff estimates that over twenty-five percent of her work was primarily physical tasks.  *Id*. at ¶¶ 31-32.

Plaintiff maintained her own residence and did not live in the homes of any of her clients. *Id*. at ¶ 30.  Plaintiff worked approximately six day a week and from 4:00 p.m. to 1:00 a.m. for a total of about fifty-four hours per week.  *Id*. at ¶ 34.  Plaintiff was paid $11.10 per hour and $16.65 per hour for overtime.  *Id*. at ¶ 35.

Plaintiff claims that Defendant failed to pay her all wages she earned in the pay period immediately following the work she performed and delayed those payments to later pay periods, including overtime compensation and minimum wages under the FLSA and the NYLL.  *Id*. at ¶ 33.  Plaintiff alleges that Defendant regularly paid her according to her scheduled work hours rather than the hours she actually worked and failed to pay her one and a half times her hourly rate for overtime.  *Id*. at ¶¶ 37-38.  Further, Plaintiff claims that Defendant made unlawful deductions from her earned wages that were not made for her benefit or otherwise authorized by Plaintiff.  *Id*. at ¶ 39.  Plaintiff also asserts that Defendant failed to establish, maintain, and preserve contemporaneous, true and accurate records reflecting all hours worked by Plaintiff on a daily and weekly basis and the times of her arrival and departure from the homes of Defendant's clients.  *Id*. at ¶ 40.  Plaintiff claims that Defendant delayed and withheld wages intentionally and pursuant to a plan or policy, in violation of the NYLL and FLSA.  *Id*. at ¶¶ 50-65.  Plaintiff alleges that she performed the same or similar work as other members of the putative class and that these facts are common to all members.  *Id*. at ¶¶ 41-49.

On December 22, 2020, Plaintiff brought this action seeking damages on behalf of herself and the putative class for Defendant's violations of the NYLL and FLSA.  Dkt. No. 1.  Defendant claims that, prior to starting her employment, Plaintiff signed a Personal Assistant Agreement

(hereinafter "Agreement") that included an arbitration clause encompassing any claims arising from the Agreement and barring her from brining a civil court action against Defendant on behalf of herself or others.  Dkt. No. 21.  As such, Defendant has moved to compel arbitration and for a stay of this proceeding pending the outcome of the arbitration.  *Id*.  As set forth below, Defendant's motion is granted and the Court will enter a stay of these proceedings.

### III. DISCUSSION

A.     **Standard of Review**

When adjudicating a motion to compel, "the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).  "'Accordingly, a court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.'" *Schapp v. Mastec Servs. Co.*, No. 12-CV-0841, 2014 WL 1311937, *1 (N.D.N.Y. Mar. 31, 2014) (quoting *Ryan v. JPMorgan Chase & Co.*, No. 12 CV 4844, 2013 WL 646388, *2 (S.D.N.Y. Feb. 21, 2013) (citation omitted)).  However, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citations omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Arbitrability of Claims**

*1. Arbitrability Framework*

The Federal Arbitration Act (hereinafter the "FAA") "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)

(citations omitted). The FAA "specifically direct[s] [courts] to respect and enforce the parties' chosen arbitration procedures." *Id*. (citation omitted).

"[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (quotations omitted). "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quotations omitted).

At the same time, however, there is a presumption of arbitrability for labor disputes where a validly formed arbitration agreement exists. *Granite Rock Co.*, 561 U.S. at 301; *United Steelworkers*, 363 U.S. at 576 (1960). "Because 'a collective bargaining agreement is not an ordinary contract,' . . . when there is an arbitration clause in a CBA, doubts about scope should be resolved in favor of coverage." *Goodrich Pump & Engine Control Sys., Inc. v. UAW & Amalgamated Local 405*, 723 Fed. Appx. 67, 69 (2d Cir. 2018) (quotations omitted). "[T]here is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Technologies, Inc.*, 475 U.S. at 650 (quoting *United Steelworkers*, 363 U.S. at 582–83). This presumption is "particularly applicable where the [arbitration] clause is broad." *Id*.

The Second Circuit has provided a "roadmap for determining whether particular disputes fall within the scope of an arbitration agreement." *Trustees of Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Workers United v. FDR Servs. Corp. of New York*, No. 17 CV 7145, 2019 WL 4081899, *2 (S.D.N.Y. Aug. 28, 2019). First, the court "should classify the particular clause as either broad or narrow." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quotation omitted). "Where the arbitration clause is broad, 'there arises a presumption of arbitrability[.]'" *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quotation omitted). A broad arbitration clause is "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause." *JLM Indus., Inc.*, 387 F.3d at 172. "So long as the arbitration clause is 'broad' and not explicitly limited to certain matters, it should be read to cover every dispute that it does not explicitly exclude." *Goodrich Pump & Engine Control Sys., Inc.*, 723 Fed. Appx. at 69.

### 2. Validity of the Agreement

The parties dispute whether Plaintiff and Defendant had a valid and enforceable agreement. *See* Dkt. No. 21 at 5; Dkt. No. 22 at 2. Plaintiff claims that the Agreement was missing pertinent information and therefore invalid. *See* Dkt. No. 22 at 2-3. Defendant claims that Plaintiff has mischaracterized the Agreement as missing information when the Agreement was merely redacted when submitted to the Court to remove sensitive information regarding Defendant's client, who is not a party to this action. Dkt. No. 23 at 2-3. The Court agrees that there is a valid agreement.

"In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law." *Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) (citation omitted). "If the existence of an agreement is properly put 'in issue, the court shall proceed summarily to the trial thereof.'" *Barrows v. Brinker Rest. Corp.*, No. 5:1-9CV-144, 2021 WL 638271, *2 (N.D.N.Y. Feb. 18, 2021) (quotation and other citation omitted). "If, however, the court is satisfied that an agreement is valid, and thus the claims before it are arbitrable, 'it must stay or dismiss further judicial proceedings and order the parties to arbitrate.'" *Id*. (quoting *Thomas*, 957 F. Supp. 2d at 499).

"The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (citations omitted). "This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." *Id*. (citation omitted). "[T]he party putting the agreement to arbitrate in issue must present 'some evidence' in support of its claim before a trial is warranted." *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001) (citations omitted). "Thus, the party challenging the existence of an agreement must make 'an unequivocal denial that the agreement had been made . . . , and some evidence should [be] produced to substantiate the denial.'" *Barrows*, 2021 WL 638271, at *2 (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)) (alterations in original).

Defendant asserts that "[d]uring orientation the onboarding specialist reviewes [sic] paperwork with the caregiver on an iPad tablet and the caregiver signs off electronically using

8

DocuSign." Dkt. No. 20-4 at ¶ 5.  "This paperwork includes government forms . . ., certain materials regarding FreedomCare policies, as well as a Personal Assistant Agreement and Acknowledgement."  *Id*. at ¶ 6.  In April 2019, Plaintiff was hired as a caregiver for T.B., and on April 9, 2019, her orientation was conducted at T.B.'s home by Defendant's onboarding specialist.  *Id*. at ¶¶ 9-11.  Plaintiff signed the Agreement at that time.  *Id*. at ¶ 13.

Defendant attached a copy of this agreement as Exhibit 1 to Ines Prieto's declaration.  *Id*. at 6-8.  The Agreement before the Court does not include who Plaintiff worked for, rather those spaces are blank.  *See id*.  Defendant claims that it redacted this information in white, and has provided the Court with a copy of the unredacted Agreement sent to Plaintiff's Counsel on January 26, 2021 via email which includes all the filled in information.  Dkt. No. 27.  Both versions are electronically signed by Plaintiff.  *See id*.; Dkt. No. 20-4 at 8.  Defendant never identified the first version of the contract as a redacted version.  *See* Dkt. No. 20-4 at ¶ 13 ("A true and correct copy of the Agreement that Ms. Carr signed is attached hereto as Exhibit 1").  It is therefore unclear whether Plaintiff signed the agreement with or without T.B.'s name included in the agreement.

The Court may not enforce an arbitration agreement where the entire contract containing the arbitration clause had not been formed.  *See Sphere Drake*, 263 F.3d at 30.  "Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract."  *Opals on Ice Lingerie v. Bodylines Inc*., 320 F.3d 362, 372 (2d Cir. 2003) (quoting *Schurr v. Austin Galleries of Ill*., 719 F.2d 571, 576 (2d Cir. 1983)).  "This is because an enforceable contract

9

requires mutual assent to the essential terms and conditions thereof." *Id*. (quoting *Schurr*, 719 F.2d at 576).

A blank space in a contract is "insufficient to vitiate the entire contract." *Boyd v. Haritidis*, 239 A.D.2d 820, 821 (3d Dep't 1997). However, where a blank space in a contract has not been filled in, the contract provision may be rendered inoperative and rejected as surplusage if the parties so intended . . . or the ambiguity 'may be cleared up in the construction of the contract by supplying the omitted words.'" *Id*. (internal and other citations omitted). "In resolving such an ambiguity and determining the parties' intent, extrinsic and/or parol evidence may be examined and the opponent of the summary judgment motion 'must also disclose in evidentiary form the particular parol evidence, if any, on which it relies.'" *Id*. (quoting *Fed. Deposit Ins. Corp. v. Herald Square Fabrics Corp.*, 81 A.D.2d 168, 181 (2d Dep't 1981)).

Plaintiff relies on *Scott v. Griswold Home Care* as support for her argument that the blank spaces have rendered the contract invalid. Dkt. No. 22 at 2-3. In *Scott*, the court determined that, under Connecticut contract law, there had not been a meeting of the minds because a blank space in the contract failed to include the name of the franchised entity. *Scott v. Griswold Home Care*, No. 3:19-CV-527, 2020 WL 2736020, *9 (D. Conn. May 26, 2020). As a result, the court determined that, based on this omission and the fact that the plaintiff had no other relationship with that party, the plaintiff could not have been reasonably certain with whom she was contracting. *Id*. The court therefore declined to hold that a valid agreement existed. *Id*.

Unlike *Scott*, Defendant has presented sufficient evidence that Plaintiff understood who she was contracting with. While the agreement may not have included T.B.'s name, Defendant

10

asserts that Plaintiff signed this agreement on April 9, 2019 in T.B.'s house. Dkt. No. 20-4 at ¶ 13. Plaintiff does not deny this. Defendant claims that Plaintiff worked as a caregiver for T.B., and again, Plaintiff does not deny this. *Id*. at ¶¶ 9-11. Rather, Plaintiff makes clear that she "was only a caregiver to one patient." Dkt. No. 22 at 8. As such, any argument that Plaintiff and Defendant did not have a meeting of the minds as to the essential term of who Plaintiff was a caregiver for is without merit. Thus, regardless of whether T.B.'s name was included in the contract at the time Plaintiff signed it, there is ample evidence to show that there was a meeting of the minds and that Plaintiff was well aware of the person who she was a caregiver for.

There also is no evidence that the Agreement was one between Plaintiff and T.B. While the Agreement discusses Plaintiff's relationship to the client, the discussion of the client sets the limitations of Defendant's obligations. For example, the Agreement states that Defendant will not provide references, that is the client's obligation and that Defendant does not make decisions regarding supervision, scheduling, and dismissal. Dkt. No. 20-4 at 6. Not only did the client not sign the agreement (there was no place for such a signature), there is no discussion of disputes between the client and Plaintiff. *See id*. The Agreement discusses grieving any breach of contract by stating, that "[i]f you believe that *FreedomCare, LLC* has failed to satisfy any of its obligations as fiscal intermediary, you can make a complaint or file a grievance with: Benjamin C. Wolf, Esq." *Id*. at 8 (emphasis added).

Additionally, the Agreement states that its purpose is to review aspects of the Consumer Directed Personal Assistant Program (hereinafter "CDPAP"). Dkt. No. 20-4 at 6. Much of the Agreement is a recitation of these policies, rather than contractual obligations between Plaintiff

and Defendant. *See id*. at 6-8. It explains that Defendant was selected as a "[f]iscal [i]ntermediary" and that "Freedom Care LLC acts on behalf of [Blank] for payroll and benefits administration." *Id*. at 6. Any obligations, or lack thereof, of Plaintiff and Defendant were clearly stated in paragraphs eleven through twenty-two. *See id*. at 7-8 ("I must advise Freedom Care LLC if I am excluded from the Medicaid program. . . . I agree that, in the event the Consumer is found not to be eligible for coverage after Freedom Care LLC has billed Medicaid for any period of time, that the Consumer, not Freedom Care LLC, is responsible for my wages during the Lapse . . . . Personal Assistant and Freedom Care LLC agree that any disputes between them arising from this agreement, or any other relationships between them shall be subject to final and binding arbitration by the American Arbitration Association").

Finally, *Scott* concerns Connecticut contract law. *Scott*, 2020 WL 2736020, at *9. Under New York contract law, a blank space in a contract is "insufficient to vitiate the entire contract." *Boyd*, 239 A.D.2d at 821. While "the contract *provision* may be rendered inoperative and rejected as surplusage if the parties so intended, . . . the ambiguity 'may be cleared up in the construction of the contract by supplying the omitted words.'" *Id*. (quotation omitted). There is no blank space in the arbitration agreement and therefore that contract provision is not at risk of being rejected under current New York contract law. And, even if it were, the ambiguity can clearly be cleared up by supplying the omitted words. Plaintiff raises no other arguments as to whether the Agreement was invalid and therefore the Court determines that there was an agreement between the parties.

### 2. Scope of the Arbitration Provision

Plaintiff asserts that the arbitration clause is narrow and does not extend to the claims alleged in the complaint. Dkt. No. 22 at 3-10. The Court disagrees.

"[F]ederal policy requires [courts] to construe arbitration clauses as broadly as possible." *Rollins v. Goldman Sachs & Co. LLC*, No. 18-CV-7162, 2019 WL 2754635, *5 (S.D.N.Y. July 2, 2019) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)) (second alteration in original). "[I]n light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)) (internal quotation marks omitted). "Doubts should be resolved in favor of coverage." *Id.* (quoting *WorldCrisa*, 129 F.3d at 74) (internal quotation marks omitted). An arbitration clause that includes the phrase 'any claim or controversy arising out of or relating to the agreement' is 'the paradigm of a broad clause.'" *Teamsters Loc. 456, et al, v. AMEC Com., LLC*, No. 18-CV-854, 2019 WL 3429594, *5 (S.D.N.Y. July 30, 2019) (quoting *Collins & Aikman Prods.*, 58 F.3d at 20).

In the present matter, the Agreement provides as follows,

> This Agreement is governed by laws of the State of New York, without reference to conflicts of laws principles. Personal Assistant and Freedom Care LLC agree that any disputes between them arising from this agreement, or any other relationships between them shall be subject to final and binding arbitration by the American Arbitration Association ("AAA"). Such arbitration shall be conducted before a single, neutral arbitrator, pursuant to the applicable AAA rules. Such arbitration shall be conducted within

>       the court jurisdiction within which Freedom Care LLC maintains its
>       primary place of business.  Freedom Care LLC shall pay for any
>       arbitration fees, except that Personal Assistant shall pay that portion
>       of the arbitration filing fee which is equal to or less than the amount
>       charged by applicable state court for filing a civil complaint.  Each
>       party shall pay their own attorneys' fees incurred in the arbitration,
>       except as provided by applicable state or federal law.  Freedom
>       Care LLC and Personal Assistant agree that neither will bring any
>       action on behalf of any party other than themselves, and specifically
>       will bring no collective or class action against each other.  This
>       clause expressly precludes Freedom Care LLC and Personal
>       Assistant from bringing a civil court action against the other party
>       on behalf of themselves or any other person or entity, except where
>       immediate injunctive relief is necessary to protect property or
>       safety.

Dkt. No. 20-4 at 6-7.

The Agreement here is broad.  Specifically, the language "that any disputes between them arising from this agreement, or any other relationships between them[,]" "is 'the paradigm of a broad clause.'"  *Teamsters Loc. 456*, 2019 WL 3429594, at *5 (quoting *Collins & Aikman Prods.*, 58 F.3d at 20).  In *Collins & Aikman Prods.*, the Second Circuit held that an arbitration clause was broad where it provided for arbitration for "'[a]ny claim or controversy arising out of or relating to th[e] agreement.'"  *Collins & Aikman Prod.*, 58 F.3d at 20.  Here, the arbitration clause is not limited to "any disputes between them arising from this agreement," but also includes disputes related to "any other relationships between them."  Dkt. No. 20-4 at 6-7.  Thus, this language is considerably broader than the language in *Collins & Aikman Prod.*, which the Second Circuit found to be the paradigm of a broad clause.

Plaintiff claims that the language "or any other relationships" refers to agreements between Plaintiff, Defendant, and Defendant's clients, as Defendant could not have more than one

relationship with Plaintiff. Dkt. No. 22 at 7. Plaintiff claims that the plural, rather than singular use of the term "relationships" requires that the relationship be between more than two people because two parties can only have one relationship. *Id*. Foremost, individuals can have multiple relationships with people, *e.g.*, a working relationship and a personal relationship. Further, Plaintiff conveniently leaves out the next two words, "between them." Dkt. No. 20-4 at 7. "[T]hem" refers to "Personal Assistant and Freedom Care LLC," the subjects of the sentence identified at the outset of the sentence. *See id*. The arbitration agreement makes no reference to the client. Plaintiff's singular versus plural argument regarding the term "relationships" would actually be more supported if relationship was singular because then it would support that Plaintiff and Defendant were only contemplating the relationship established by the Agreement. However, the use of the plural relationships supports that Plaintiff and Defendant contemplated arbitrating more than the relationship established via the agreement.

For the Court to assume that the language "any other relationships between them" means only any relationships Plaintiff and Defendant had with a third party would require the Court to completely disregard the language of the contract, its plain interpretation, and read words into the contract that are not present. The Court further rejects Plaintiff's attempt to make this contract language ambiguous through this nonsensical interpretation. *Int'l Multifoods Corp. v. Com. Union Ins. Co*., 309 F.3d 76, 83 (2d Cir. 2002) ("We have explained that '[i]f the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence' and it may then award summary judgment").

The agreement is therefore broad and covers all relationships between Plaintiff and Defendant. Analogously, it covers Plaintiff's claims that Defendant failed to pay her in the appropriate amount and within the appropriate amount of time—which clearly "aris[es] from this agreement" as the Agreement specifically discusses Defendant's obligation to pay Plaintiff and under what circumstances that obligation does not extend. *See* Dkt. No. 20-4 at 6-8. Therefore, there is a presumption that the arbitration clause includes Plaintiff's claims.

### *3. Arbitration of Class Action Claim*

Defendant asserts that Plaintiff is required to arbitrate her claims against Defendant on an individual basis as the Agreement expressly forbids her from bringing a class action suit. Dkt. No. 21 at 8-9. The Court agrees.

"[C]ourts have rejected class arbitration if an arbitration agreement [i]s silent on the issue." *Clookey v. Citibank, N.A*., No. 8:14-CV-1318, 2015 WL 8484514, *4 (N.D.N.Y. Dec. 9, 2015) (citations omitted). However, "[i]f an agreement could reasonably be interpreted to authorize class arbitration, at least one district court in the Circuit has held that such issue should be referred to the arbitrator." *Id*. (citing *Edwards v. Macy's Inc*., No. 14CV-8616, 2015 WL 4104718, *12 (S.D.N.Y. Jun. 30, 2015)). The agreement need not specifically use the term "class" or "class-wide arbitration," so long as the language of the agreement is sufficiently broad to include the arbitration of the class action. *See Edwards*, 2015 WL 4104718, at *10. Thus, "[w]here, as here, the agreement is arguably not silent—that is where there is language that is capable of being construed in one of several ways on the issue—the arbitrators, not the Court, should interpret the contract of the parties in the first instance." *Id*. at *12.

In a three-sentence argument, Plaintiff assert that because there is no valid agreement to arbitrate, "the class waiver in the Agreement is inapplicable to her claims in this action and she has the right to seek relief on behalf of others who are similarly situated." Dkt. No. 22 at 10. Having found Plaintiff's argument meritless that the Agreement and arbitration clause are invalid, the Court rejects Plaintiff's argument.

The Arbitration clause does not specifically reference class actions. *See* Dkt. No. 20-4 at 6-7. However, the clause does contemplate Plaintiff bringing a class action on behalf of others. *See id*. The clause states, "[t]his clause expressly precludes Freedom Care LLC and Personal Assistant from bringing a civil court action against the other party on behalf of themselves or any other person or entity. . . ." *Id*. at 7. As this is a civil action that Plaintiff has brought on behalf of herself and others, it clearly is within the scope of the arbitration agreement. As there is a valid agreement to arbitrate and Plaintiff's claims fall within the scope of that agreement, Defendant's motion to compel is granted.

## C.   Imposition of a Stay

The parties have requested that a stay be entered should the Court determine that there is a binding arbitration agreement between the parties. The parties' request is granted. *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015) ([T]he Federal Arbitration Act, 9 U.S.C. § 1 et seq. ('FAA'), requires a stay of proceedings when all claims are referred to arbitration and a stay requested").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's Motion to Compel Arbitration (Dkt. No. 19) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall stay this case; and the Court further

**ORDERS** that the parties shall file a status report with the Court **every ninety (90) days** while proceeding with arbitration and **within twenty (20) days** of any final decision by the arbitrator; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 20, 2021
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge